UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| DENNIS D'ANDREA, | 15-CV-467-MJR |
| | DECISION AND ORDER |
| Plaintiff, | |
| -v- | |
| ENCOMPASS INSURANCE COMPANY OF AMERICA,[1] | |
| Defendant. | |

_____

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 16). Presently before the Court is defendant Encompass Insurance Company of America's motion for summary judgment dismissing plaintiff Dennis D'Andrea's complaint. (Dkt. No. 22). The Court heard oral argument on the motion on August 9, 2018. (Dkt. No. 41). For the following reasons, the motion is granted.

## **BACKGROUND**[2]

D'Andrea commenced this action seeking property insurance coverage for a fire loss that occurred at a property known as 6216 Broadway, Lancaster, New York (the "Premises") on April 27, 2013. (Dkt. No. 1-7 (Amended Complaint removed from New York State Supreme Court)). The Premises was not D'Andrea's home, but rather a two-unit residence that had been rented to tenants before the fire. (Dkt. No. 22-2 (Mura Dec.)

---

[1] The Clerk of Court is directed to amend the caption accordingly.
[2] Taken from the pleadings and motion papers filed in this action, including Encompass' Statement of Material Facts ("Deft. Stmt."). (Dkt. No. 22-1). When citing a proposed fact within Encompass' statement, the Court has confirmed that D'Andrea's responding statement ("Pltf. Stmt.") (Dkt. No. 37) either admits the fact or fails to specifically controvert it with evidence. *See* W.D.N.Y. L.R. Civ. P. 56(a). Additionally, the Court notes that D'Andrea set forth his own proposed facts in his responding statement (*see* Pltf. Stmt. ¶¶39-125), but none of these proposed facts affect the Court's analysis of Encompass' motion.

¶5). For the period February 19, 2013 to February 19, 2014, Encompass issued a Universal Security Deluxe Package policy of insurance (the "Policy") to D'Andrea for the Premises that provides, among other things, insurance coverage for losses occurring within the Policy period due to fire. (Deft. Stmt. ¶¶2-5).

After the fire loss was reported, Encompass retained an origin and cause investigator to perform an investigation. (*Id.* ¶9). The investigator concluded that the fire originated in the basement of the Premises, but he could not determine the cause of the fire, as he was unable to rule out an accidental cause or a fire originating due to human involvement. (*Id.* ¶10). Encompass' investigation also included requesting sworn statements in proof of loss and various other documents from D'Andrea. (*Id.* ¶11). In conjunction with and comprising his claim to Encompass, D'Andrea submitted three sworn statements in proof of loss — one for the loss of the dwelling, one for loss of use of the dwelling, and one for loss of business personal property. (*Id.* ¶¶12-13, 17-18). At issue on the instant motion for summary judgment are the dwelling proof of loss and the loss of use proof of loss. As relevant here, the dwelling proof of loss requests $225,000 in damages and lists D'Andrea as the owner of the Premises (*id.* ¶¶13-14), while the loss of use proof of loss requests $13,476 in damages, including $9,600 in lost rent for the Premises' lower apartment (*id.* ¶¶18-19). In support of his claim for lost rent, D'Andrea submitted a written lease agreement dated March 28, 2013 that lists D'Andrea as landlord and his girlfriend, Judith Burton, as tenant. (*Id.* ¶20). The lease purports to be signed by both D'Andrea and Burton. (*Id.* ¶21).

After receiving the proofs of loss, Encompass had D'Andrea submit to an Examination Under Oath ("EUO") at which he was questioned about, among other things,

his alleged ownership of the Premises. (*Id.* ¶¶24-26). D'Andrea testified that at the time of the fire, no names other than his name were on the deed as title owner of the Premises and that there was no mortgage on the Premises. (*Id.* ¶¶26, 28). D'Andrea also testified that he did not transfer ownership of the Premises to his son, Andrew D'Andrea, and that there had been only a "verbal agreement" between him and his son to sell the Premises. (*Id.* ¶¶30, 32). D'Andrea's testimony regarding the deed and mortgage for the Premises was incorrect. Pursuant to a warranty deed dated January 21, 2013 and recorded in the Erie County Clerk's Office on January 23, 2013, Dennis D'Andrea granted title to the Premises to Andrew D'Andrea. (*Id.* ¶¶27, 31; Dkt. No. 22-11 (Deed)). Additionally, pursuant to a mortgage dated January 21, 2013 and recorded in the Erie County Clerk's Office on January 23, 2013, Andrew D'Andrea mortgaged the Premises to Dennis D'Andrea to secure a $50,000 note signed and dated January 21, 2013. (Deft. Stmt. ¶29; Dkt. No. 22-12 (Mortgage)). Andrew D'Andrea was the sole recorded deed owner of the Premises at the time of the fire on April 27, 2013 and at the time D'Andrea submitted his dwelling proof of loss to Encompass. (Deft. Stmt. ¶¶15-16). In response to Encompass' motion for summary judgment, D'Andrea concedes that he did in fact deed the Premises to his son on January 21, 2013 in return for a mortgage. (Dkt. No. 33 (D'Andrea Dec.) ¶¶14, 22).

D'Andrea's EUO testimony also touched upon his claim for lost rent and his prior efforts to sell the Premises. In particular, D'Andrea testified that Burton signed a lease before the fire to rent the lower apartment of the Premises. (Deft. Stmt. ¶33). However, contrary to D'Andrea's testimony, Burton testified at her deposition that she did not discuss or agree to pay D'Andrea any money for using the lower apartment and never

signed the lease agreement. (*Id.* ¶¶22-23, 35-36). D'Andrea further testified during his EUO that he attempted to sell the Premises on only one occasion eight years before the fire (*id.* ¶37), but he testified at his deposition that he had listed the Premises for sale in 2009, 2010, and 2011 (*id.* ¶38).

Relying on what it believed to be D'Andrea's misrepresentations in his proofs of loss and at his EUO, Encompass denied D'Andrea's request for insurance coverage under the Policy. (Dkt. No. 22-24 (December 23, 2013 Denial Letter)). D'Andrea thereafter commenced this action against Encompass seeking coverage under the Policy. (Dkt. No. 1-7 (Amended Complaint)). After the parties completed discovery, Encompass filed the instant motion for summary judgment arguing that D'Andrea is not entitled to coverage under the Policy because he breached the Policy's Concealment or Fraud and Cooperation conditions by misrepresenting his ownership and financial interest in the Premises, by falsely claiming that he leased the lower apartment to Burton before the fire, and by falsely testifying that he attempted to sell the Premises only one time before the fire. (Dkt. No. 22-25 (Encompass Memo. of Law)). In the alternative, Encompass asks the Court to award it partial summary judgment limiting D'Andrea's recovery in this action to no more than $50,000 — *i.e.*, the amount of his mortgage on the Premises. (*Id.*). D'Andrea opposes Encompass' motion, arguing that he did not breach the Policy's Concealment or Fraud and Cooperation conditions, or, in the alternative, that there are at least disputed issues of fact as to whether he breached either condition. (Dkt. No. 36 (D'Andrea Memo. of Law)).

**DISCUSSION**

Summary judgment is to be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once the moving party has made a properly supported showing of the absence of any genuine issue as to all material facts, "the nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal quotation marks and citation omitted). "A genuine dispute of material fact 'exists for summary judgment purposes where the evidence, viewed in the light most favorable to the nonmoving party, is such that a reasonable jury could decide in that party's favor.'" *Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013) (quoting *Guilbert v. Gardner*, 480 F.3d 140, 145 (2d Cir. 2007)). While "[a]ll reasonable inferences and any ambiguities are drawn in favor of the nonmoving party," *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990), to defeat summary judgment the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co.*, 475 U.S. at 586.

    I.    *Concealment or Fraud Condition*

Under the Policy's Concealment or Fraud condition, Encompass may deny coverage to D'Andrea if he "[i]ntentionally concealed or misrepresented any material fact or circumstance" or "[e]ngaged in fraudulent conduct" before or after a claimed loss. (Deft. Stmt. ¶8). New York State law — which the parties agree governs the Policy — provides that in order to void an insurance policy based upon fraud, the insurer must show by clear and convincing evidence that the insured "willfully made a false and material statement

under oath with the intent to defraud the insurer." *Staten Island Supply Co., Inc. v. Lumbermens Mut. Cas. Co.*, No. 02-CV-6390 (DGT), 2005 WL 711678, at *5 (E.D.N.Y. Mar. 29, 2005); *Fold-Pak Corp. v. Liberty Mut. Fire Ins. Co.*, 784 F. Supp. 49, 57 (W.D.N.Y. 1992) (acknowledging clear and convincing evidence standard). "[T]he materiality requirement is satisfied if the false statement concerns a subject relevant and germane to the insurer's investigation as it was then proceeding." *Fine v. Bellefonte Underwriters Ins. Co.*, 725 F.2d 179, 183 (2d Cir. 1984). "[Q]uestions as to ownership, liens and encumbrances, and changes of interest in property are material as a matter of law." *Carlin v. Crum & Forster Ins. Co.*, 191 A.D.2d 373, 373 (1st Dep't 1993). "[I]ntent is the key element to be assessed in determining whether [an insured] intentionally misrepresented [his] claims." *Fold-Pak Corp.*, 784 F. Supp. at 59. An insured's unintentional errors or omissions are insufficient to make out a fraud claim. *See Magie v. Preferred Mut. Ins. Co.*, 91 A.D.3d 1232, 1233-34 (3d Dep't 2012) ("Incorrect information is not necessarily tantamount to fraud or material misrepresentation as the insured must tender 'proof of intent to defraud — a necessary element to the defense.'") (quoting *Deitsch Textiles, Inc. v. N.Y. Prop. Ins. Underwriting Ass'n*, 62 N.Y.2d 999, 1001 (1984)).[3]

Here, Encompass argues that D'Andrea breached the Policy's Concealment or Fraud condition by: (1) misrepresenting his ownership and financial interest in the Premises; (2) falsely claiming that he leased the lower apartment of the Premises to Burton prior to the fire; and (3) falsely testifying that he attempted to sell the Premises

---

[3] Relying on *Pacific Indemnity Co. v. Golden*, 985 F.2d 51 (2d Cir. 1993), Encompass argues that it need not prove fraudulent intent. However, *Pacific Indemnity Co.* applies Connecticut law, not New York law. It is well settled under New York law that intent to defraud must be established in order to deny coverage for fraud. *See Varda, Inc. v. Ins. Co. of N. Am.*, 45 F.3d 634, 639 (2d Cir. 1995) (recognizing that intent to defraud is a "necessary element") (quoting *Deitsch Textiles, Inc.*, 62 N.Y.2d at 1001).

- 6 -

only one time before the fire. The Court will address each alleged misrepresentation in turn.

### A. *Ownership and Financial Interest in the Premises*

Encompass argues that D'Andrea made several misrepresentations when asked about his ownership and interest in the Premises — namely, that he owns the Premises, that no names other than his name were on the deed as title owner of the Premises at the time of the fire, that at the time of the fire there was no mortgage on the Premises, that he did not transfer ownership of the Premises to his son, and that he had only a verbal agreement to sell the Premises to his son. Relying on *GuideOne Specialty Mutual Insurance Co. v. Congregation Bais Yisroel*, D'Andrea argues that Encompass' questions regarding his ownership of the Premises are ambiguous, and an answer to an ambiguous question cannot be considered a fraudulent misrepresentation. 381 F. Supp. 2d 267, 274 (S.D.N.Y. 2005). According to D'Andrea, ownership is ambiguous in this case because even though he deeded the Premises to his son and received back from him a $50,000 note and mortgage on the Premises, he still exercised control over the Premises at the time of the fire and considered himself to be its owner. (Dkt. No. 33 (D'Andrea Dec.) ¶22). D'Andrea's claim that he believed himself to be the owner of the Premises is dubious given that he deeded the Premises to his son a mere three months before the fire and nine months before his EUO. However, even accepting D'Andrea's contention that he believed himself to be the owner of the Premises, the fact remains that Encompass also asked D'Andrea if anyone's name was on the deed for the Premises other than his name and whether or not there was a mortgage on the Premises. (Dkt. No. 22-4 (D'Andrea EUO Tr.) at 21, 96). Neither question can be considered ambiguous, and D'Andrea

answered both questions untruthfully. (*Id.*). Indeed, D'Andrea now concedes that he did in fact deed the Premises to his son on January 21, 2013 in return for a mortgage. (Dkt. No. 33 (D'Andrea Dec.) ¶¶14, 22). Consequently, Encompass has demonstrated that D'Andrea misrepresented facts under oath in connection with his claimed loss.

The next issue is whether D'Andrea's misrepresentations regarding the deed and mortgage are material. It is clear that they are because "questions as to ownership, liens and encumbrances, and changes of interest in property are material as a matter of law." *Carlin*, 191 A.D.2d at 373. Additionally, Encompass' claim investigator, Glenn Webster, states that D'Andrea's misrepresentations were material to his investigation as it was then proceeding because the amount payable under the Policy depends in part on D'Andrea's insurable interest — *i.e.*, whether he owns the Premises, holds a mortgage on it, or has no interest in the Premises at all. (Dkt. No. 22-18 (Webster Dec.) ¶¶28-30). D'Andrea has not submitted any evidence challenging Webster's testimony in this regard; he instead argues that his statements about the deed and mortgage could not have been material because the statements would not "have led to [Encompass] refus[ing] to enter into the [Policy]." (Dkt. No. 36 (D'Andrea Memo. of Law) at 16). D'Andrea's argument misconstrues the materiality standard. Materiality in this case does not turn on whether or not Encompass would have issued the Policy absent the misrepresentation, but rather whether the misrepresentation "concerns a subject relevant and germane to [Encompass'] investigation as it was then proceeding." *Fine*, 725 F.2d at 183. The uncontroverted evidence that D'Andrea's ownership of the Premises was relevant and germane to Webster's investigation meets this requirement.

The third and final issue is whether D'Andrea willfully misrepresented the truth about the deed and mortgage with the intent to defraud Encompass. "Although 'actual intent' to defraud is rarely sufficiently proven to warrant summary judgment," *Cadle Co. v. Newhouse*, 74 F. App'x 152, 153 (2d Cir. 2003) (summary order), summary judgment may be granted where "[n]o reasonable trier of fact could infer anything other than knowing intent to defraud," *Maersk, Inc. v. Neewra, Inc.*, 687 F. Supp. 2d 300, 323 (S.D.N.Y. 2009) (granting summary judgment on fraud claim); *see also Cadle Co.*, 74 F. App'x at 153 (affirming summary judgment on fraud claim in light of the "strong indicators of fraudulent intent" in the record). Such is the case here. It is undisputed that D'Andrea deeded the Premises to his son in return for a $50,000 note and mortgage a mere three months before the fire and only nine months before his EUO. D'Andrea testified that he and his son entered into this transaction so that his son, who is legally blind, could receive a $500 tax deduction on the Premises. (Dkt. No. 35-4 (D'Andrea Dep. Tr.) at 32-35). The timing and nature of D'Andrea's transaction with his son makes it implausible that his testimony regarding the deed and mortgage was a mere mistake rather than a concerted effort to deceive Encompass. *See Rickert v. Travelers Ins. Co.*, 159 A.D.2d 758, 759-60 (3d Dep't 1990) (finding insured's contention that he had forgotten about prior insurance claims during his EUO to be implausible given that those claims were relatively recent (the last one occurring one year before the EUO) and involved substantial sums of money); *Carlin*, 191 A.D.2d at 373 (finding plaintiffs' statement that they owned the insured property at the time of the loss to be an intentional misrepresentation because documentary evidence conclusively established plaintiffs' knowledge that legal title to the property was actually held by the City of New York). The only reasonable conclusion to

be drawn from D'Andrea's actions and testimony is that he attempted to hide the truth about the deed and mortgage from Encompass in an attempt to receive coverage that he was not entitled to under the Policy.

D'Andrea has not come forward with any evidence from which a reasonable juror could conclude that he acted with anything but intent to defraud. His argument that he did not intend to defraud Encompass because he continued to view himself as the owner of the Premises even after deeding the Premises to his son ignores that Encompass specifically asked him not just whether he owned the Premises, but also if anyone else's name was on the deed for the Premises and whether or not there was a mortgage on the Premises. D'Andrea answered both questions untruthfully. D'Andrea's declaration in opposition to Encompass' summary judgment motion concedes that he testified untruthfully about the deed and mortgage at his EUO, yet it offers no explanation for either misrepresentation. (Dkt. No. 33). D'Andrea does not claim, for example, that he forgot about the deed and mortgage while testifying at his EUO or that his status as a lay person (as D'Andrea's counsel contended at oral argument) somehow affected his ability to testify truthfully about the transaction with his son. (*See id.*).

Also without merit is D'Andrea contention that he could not have intended to defraud Encompass because he did not know the meaning of an "indenture," which is printed on the face of the deed to the Premises. (Dkt. No. 36 (D'Andrea Memo. of Law) at 9). Contrary to D'Andrea's argument, Encompass did not ask him about an "indenture" at his EUO — it asked him about a "deed." (Dkt. No. 22-4 (D'Andrea EUO Tr.) at 21). D'Andrea did not have to know the meaning of an indenture in order to tell the truth about the deed or the mortgage. Moreover, when questioned at his deposition regarding the

deed, D'Andrea admitted to knowing that the document memorializes his sale of the Premises to his son:

> Q. Do you know what this document is or it represents?
> A. I thought it was Adventure.
> Q. Do you know what this document is or represents?
> A. Yes, between me and my son here, between me and my son.
> Q. What is it though, what does it do?
> A. I am going to sell him the property.
> Q. Going to?
> A. Well, apparently we did, yes.

(Dkt. No. 22-8 (D'Andrea Dep. Tr.) at 20-21). Accordingly, for these reasons, there is no genuine dispute that D'Andrea breached the Policy's Concealment or Fraud condition by making willful misrepresentations regarding the deed and mortgage. Encompass' motion for summary judgment dismissing the complaint is granted on this basis.

B. *Lease*

Encompass next argues that D'Andrea breached the Policy's Concealment or Fraud condition by falsely claiming that he leased the lower apartment to Burton before the fire. Encompass believes that D'Andrea's claim is false and that the lease agreement he submitted in support of his claim is a fake because Burton testified at her deposition that she did not discuss or agree to pay D'Andrea any money for using the lower apartment and never signed the lease agreement. (Deft. Stmt. ¶¶22-23, 35-36). In response to this argument, D'Andrea submits a declaration from Burton stating that she testified incorrectly about the lease at her deposition because she was experiencing mental and physical health problems that day. (Dkt. No. 34 (Burton Dec.)). Regardless of whether Burton testified truthfully at her deposition, D'Andrea's EUO testimony regarding the lease, along with the written lease agreement he submitted in support of

his claim for lost rent, constitutes evidence from which a reasonable juror could find that he did not misrepresent the existence of the lease. Encompass is thus not entitled to summary judgment on this particular issue.

C. *Efforts to Sell the Premises*

Encompass also argues that D'Andrea misrepresented his prior efforts to sell the Premises. In particular, D'Andrea testified during his EUO that he attempted to sell the Premises only one time eight years before the fire (Deft. Stmt. ¶37), but he testified at his deposition that he listed the Premises for sale in 2009, 2010, and 2011 (*id.* ¶38). Contrary to Encompass' argument, "attempting" to sell the Premises is not necessarily the same thing as "listing" the Premises for sale. As D'Andrea explained at his deposition, although he listed the Premises for sale on more than one occasion, he did so not with the intent to sell the Premises, but merely to appraise its value for tax purposes. (Dkt. No. 22-8 (D'Andrea Dep. Tr.) at 125-29). Accordingly, Encompass is not entitled to summary judgment on this particular issue.

II. *Cooperation Condition*

Under the Policy's Cooperation condition, Encompass may deny insurance coverage in the event D'Andrea fails to "[c]ooperate with [Encompass] in the investigation or settlement of the claim." (Deft. Stmt. ¶7). Cooperation means "a fair and frank disclosure of information reasonably demanded by the insurer to enable it to determine whether there is a genuine defense." *Coleman v. New Amsterdam Cas. Co.*, 247 N.Y. 271, 276 (1928). The information provided by the insured must be truthful. *See Car & Gen. Ins. Corp. v. Goldstein,* 179 F. Supp. 888, 891-92 (S.D.N.Y. 1959), *aff'd*, 277 F.2d 162 (2d Cir. 1960); *see also Nationwide Mut. Ins. Co. v. Graham*, 275 A.D.2d 1012, 1013

(4th Dep't 2000) ("[The insured's] failure to make fair and truthful disclosures in reporting the incident constitutes a breach of the cooperation clause of the insurance policy as a matter of law."). To deny insurance coverage for lack of cooperation, "an insurance carrier must demonstrate (1) that it acted diligently in seeking to bring about the insured's cooperation, (2) that the efforts employed by the insurer were reasonably calculated to obtain the insured's cooperation, and (3) that the attitude of the insured, after his or her cooperation was sought, was one of willful and avowed obstruction." *GuideOne Specialty Mut. Ins. Co.*, 381 F. Supp. 2d at 276 (quoting *Allstate Ins. Co. v. United Int'l Ins. Co.*, 16 A.D.3d 605, 606 (2d Dep't 2005)).[4] Regarding the third requirement, "[w]illful refusal to cooperate will be found where refusal is 'indicative of a pattern of noncooperation [sic] for which no reasonable excuse for non-compliance has been proffered.'" *Fold-Pak Corp.*, 784 F. Supp. at 59 (quoting *Bulzomi v. N.Y. Cent. Mut. Fire Ins. Co.*, 92 A.D.2d 878, 878 (2d Dep't 1983)). Unlike fraud, which must be proven by clear and convincing evidence, lack of cooperation need only be proven by a preponderance of the evidence. *See id.* at 59-60.

Here, Encompass acted diligently in seeking to bring about D'Andrea's cooperation under the Policy by requesting proofs of loss and taking his EUO. (Dkt. No. 22-18 (Webster Dec.) ¶¶12-17). Encompass' efforts were reasonably calculated to obtain D'Andrea's cooperation because it is customary for insurance companies to investigate claims in such a manner. Turning to whether D'Andrea's attitude after Encompass began

---

[4] A case relied upon by the parties in their respective summary judgment papers, *Staten Island Supply Co. v. Lumbermens Mutual Casualty Co.*, suggests that a different cooperation standard applies where, as here, the case involves a fire insurance policy as opposed to a liability policy. No. 02-CV-6390 (DGT), 2005 WL 711678, at *6 n.5 (E.D.N.Y. Mar. 29, 2005). However, because the parties rely upon the three-part standard discussed in the text above, the Court will rely upon that standard as well.

seeking his cooperation under the Policy was one of willful and avowed obstruction, this requirement is satisfied as a matter of law because, as already discussed in connection with the Policy's Concealment or Fraud condition, D'Andrea misrepresented the truth about the deed and mortgage to the Premises in order to defraud Encompass.[5] (*See supra* Point I.A). D'Andrea has failed to provide any reasonable excuse for these misrepresentations. (*See id.*). Accordingly, Encompass' motion for summary judgment dismissing the complaint is granted under the Policy's Cooperation condition in addition to the Policy's Concealment or Fraud condition.[6]

## **CONCLUSION**

Encompass has demonstrated as a matter of law that D'Andrea breached the Policy's Concealment or Fraud and Cooperation conditions. Encompass is entitled to deny coverage under the Policy on account of those breaches. Accordingly, Encompass' motion for summary judgment (Dkt. No. 22) dismissing D'Andrea's complaint is granted.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

---

[5] Relying on *GuideOne Specialty Mutual Insurance Co.*, D'Andrea argues that summary judgment under the Policy's Cooperation condition should be denied because the record contains evidence of his "partial cooperation." 381 F. Supp. 2d at 276 ("If the record contains evidence of partial cooperation and partial non-cooperation on the part of the insured, summary judgment may not be granted."). However, *GuideOne* is distinguishable because the insured in that case did not make a material misrepresentation to the insurer. *See id.* D'Andrea has not cited any authority for the principal that an insured's "partial cooperation" is enough to defeat summary judgment where, as here, the insured misled the insurer by making material misrepresentations. Indeed, case law provides that the failure to make truthful disclosures constitutes a breach of the cooperation condition as a matter of law. *See Car & Gen. Ins. Corp.,* 179 F. Supp. at 891-92; *Nationwide Mut. Ins. Co.*, 275 A.D.2d at 1013.

[6] Given the Court's ruling regarding D'Andrea's breaches of the Concealment or Fraud and Cooperation conditions, it need not address Encompass' alternative argument that D'Andrea cannot recover more than $50,000 — *i.e.*, the amount of his mortgage on the Premises — under the Policy.

Dated: August 28, 2018
       Buffalo, New York

                                          */s/ Michael J. Roemer*
                                          MICHAEL J. ROEMER
                                          United States Magistrate Judge