UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
_____

DENNIS D'ANDREA,

        Plaintiff,

v.                               Docket No. 1:15-cv-0000467-MJR

ENCOMPASS INSURANCE
COMPANY OF AMERICA,

        Defendant.
_____

**REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR RELIEF**

Buffalo, New York
November 6, 2018

**DUKE HOLZMAN PHOTIADIS
& GRESENS LLP**
Charles C. Ritter, Esq.
Thomas D. Lyons, Esq.
*Attorneys for Plaintiff, Dennis D'Andrea*
701 Seneca Street, Suite 750
Buffalo, New York 14210
(716) 855-1111
critter@dhpglaw.com
tlyons@dhpglaw.com

## **PRELIMINARY STATEMENT**

Plaintiff, Dennis D'Andrea, submits this memorandum in further support of his motion pursuant to Fed. R. Civ. P. 59(e) or 60(b), and in reply to the memorandum of law filed by Defendant, Encompass Insurance Company of America ("Encompass").

Plaintiff's motion should be granted, because Plaintiff has identified errors of law and fact that are determinative of the underlying motion, insomuch as this Court's August 28, 2018 Decision and Order (the "Decision") granted summary judgment to Defendant, based on isolated, out-of-context portions of Plaintiff's testimony from his October 18, 2013 examination under oath ("EUO"). Specifically, the Decision held that the only possible conclusion to be drawn from Plaintiff's EUO testimony was that Plaintiff intended to defraud Defendant regarding the ownership of, and existence of a mortgage on, the property at issue. Indeed, in so holding, the Court made adverse credibility determinations against Plaintiff, and/or overlooked or misapprehended large portions of Plaintiff's EUO testimony that demonstrate there are other possible, and reasonable inferences and conclusions to be drawn from Plaintiff's EUO testimony.

Simply put, Plaintiff's EUO testimony, when viewed in full and in context, does not support making adverse credibility determinations against Plaintiff as a matter of law. Nor does Plaintiff's EUO testimony support a holding that Defendant proved Plaintiff's alleged intent to defraud by clear and convincing evidence—particularly because all facts and inferences were supposed to be viewed and drawn in Plaintiff's favor in the underlying summary judgment motion.

Therefore, for all of the reasons set forth in Plaintiff's memorandum of law in support of this motion, and for the reasons set forth herein in reply, Plaintiff respectfully submits that this Court should issue an Order pursuant to Fed. R. Civ. P. 59(e) or 60(b), either: (1) amending the

Decision to deny Defendants' motion for summary judgment in its entirety, or (2) granting reconsideration of the Decision, and upon reconsideration, denying Defendant's motion for summary judgment.

## ARGUMENT

### PLAINTIFF DID NOT MISREPRESENT MATERIAL FACTS WITH INTENT TO DEFRAUD DEFENDANT

**A.** **Plaintiff's testimony about the names on the deed for the Property.**

Contrary to what Defendant suggests, Plaintiff's present motion is not merely an attempt to rehash arguments previously considered by the Court, nor is it an attempt to take a proverbial second bite at the apple.  Instead, this motion is directed expressly to specific, determinative factual findings made by the Court, which, it is respectfully submitted, were made because the Court overlooked or misapprehended key aspects of Plaintiff's EUO testimony.

Specifically, the Court made a mixed factual-and-credibility-based finding that "the timing and nature of [Plaintiff's] transaction with his son makes it implausible that [Plaintiff's] testimony regarding the deed and mortgage was a mere mistake rather than a concerted effort to deceive [Defendant]."  Decision, p. 9, ECF Doc. No. 42.  In making that determination, the Court relied upon the following factual findings:  (1) "D'Andrea testified that at the time of the fire, no names other than his name were on the deed as title owner of the Premises and that there was no mortgage on the Premises" (id. at 3); (2) "D'Andrea also testified that he did not transfer ownership of the Premises to his son, Andrew D'Andrea, and that there had been only a "verbal agreement" between him and his son to sell the Premises" (id.); and (3) "Encompass specifically asked [Plaintiff] not just whether he owned the Premises, but also if anyone else's name was on the deed for the Premises and whether or not there was a mortgage on the Premises. D'Andrea answered both questions untruthfully" (id. at

10).  However, each of those three statements were proffered by the Defendant and accepted by the Court, despite the fact that Plaintiff's EUO testimony contradicts them.  The actual, full, and in-context testimony elicited from Plaintiff at his EUO in connection with the deed for the property was highlighted and attached as Exhibit A to Plaintiff's initial memorandum of law in support of this motion.  See Plaintiff's Ex. A, EUO Tr., 21-30, ECF Doc. No. 44-3.

Plaintiff did not say his name was the only name on the deed at the time of the fire.  Instead, Plaintiff testified that his son's name was on the deed, but that as he was being questioned in October 2013, he believed the deed had been "forfeited" back to him by his son—hence Plaintiff's initial response of "not anymore" when Defendant's counsel asked if any other names appeared on the deed.  Id.  That is a far cry from saying "that at the time of the fire, no names other than his name were on the deed as title owner of the Premises . . . ." (Decision at 3).

Further, the trier of fact must make a credibility determination at trial about whether Plaintiff genuinely thought the deed automatically "forfeited" back to him when his son could not move into the property and begin making nominal payments.  The Court made an adverse credibility ruling in that regard, based on the "timing and nature of the transaction" with Plaintiff's son.  However, the transaction was a nowhere-near-arms-length transaction, entered into so Plaintiff and his son could benefit from a disabled-resident tax credit on the property, while simultaneously teaching Plaintiff's disabled son some financial responsibility.  See generally Plaintiff's Ex. A, EUO Tr. 21-30, ECF Doc. No. 44-3; D'Andrea Decl., ¶¶ 7-22, ECF Doc. No. 33.  The transaction was not a typical mortgagee-mortgagor situation involving financing, home inspections, a real-estate closing, monthly mortgage statements, etc.  In fact, Plaintiff's son never actually moved in and started making his nominal payments to Plaintiff.  Therefore, any credibility determination about Plaintiff's testimony regarding the effect of the transaction should be made at trial, not on summary judgment.  See Pritchard v. County of Erie, 2018 U.S. Dist. LEXIS 29627,

at *5 (W.D.N.Y. Feb. 22, 2018) ("[A] court's role in deciding a summary judgment motion is 'not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'"").

Furthermore, Plaintiff's deposition testimony is not dispositive of Plaintiff's knowledge regarding the effect of the transaction, despite the fact that it was referenced for that purpose both in the Court's Decision and in Defendant's opposition papers for the present motion.  Plaintiff testified at his deposition that he knew the deed represents a sale of the property to his son.  See Decision at 11, ECF Doc. No. 42.  However, Plaintiff's deposition was conducted five (5) years after Plaintiff's EUO, and during the deposition, Defendant did _not_ ask Plaintiff whether he knew the effect of the deed when it was made.  Likewise, Defendant did _not_ ask if Plaintiff knew the effect of the deed when he testified at the October 2013 EUO.  What _was_ asked in the deposition, was "[d]o you know what this document is or represents?" (id.)—*present tense*, i.e., in July 2018.  Plaintiff's knowledge about the deed in 2018 has no bearing on Plaintiff's knowledge when he testified in October 2013, i.e., whether he allegedly intended to defraud Defendant when he testified at his EUO in October 2013.

In short, even though Plaintiff's EUO testimony about the deed being "forfeited" may have been factually inaccurate, that inaccurate testimony does not, by itself, constitute clear and convincing evidence of intent to defraud Defendant.  As a result, Defendant's motion for summary judgment should have been denied.

## B.  Plaintiff's testimony about the existence of a mortgage on the Property.

Plaintiff did not intentionally misrepresent any facts regarding his mortgage on the Property.  As explained in Plaintiff's initial memorandum of law in support of this motion, context

matters when summary judgment is premised entirely upon transcribed testimony.  That is even more true because when reading transcribed testimony, the reader lacks the benefit of hearing tone or inflection, hearing the timing and delivery of the question and answer, and seeing any non-verbal gestures or motions as cues to discern what the testimony relates to.

A famous example of the perils of reading transcribed testimony without context was portrayed in the movie "*My Cousin Vinny*," where isolated portions of Ralph Macchio's transcribed testimony made it appear as though his character admitted to killing a gas station clerk, when in reality, he said "I did it" to what he believed was a question about inadvertently stealing a can of tuna from the gas station.

Much like in *My Cousin Vinny*, this case presents a situation where Plaintiff's transcribed testimony must be considered in context, by reviewing the surrounding testimony—not simply reading a single question and single answer, which were asked in the middle of a more-than-seven-hour-long EUO.  See ECF Doc. 22-4, EUO Tr. 1:6-11 ("Examination Under Oath of Dennis D'Andrea held . . . on October 18th, 2013 at 10:15 AM, ending at 5:58 PM").

Here, Defendant contends that the only mortgage-related testimony of any importance is as follows:  "Q. Is there a mortgage, or was there a mortgage on 6216 Broadway? A. No."  Id. at 96:14-16.  However, context matters, because the immediately preceding question and answer were as follows:  "Q. Question 12 asks for notices or correspondence sent to or received from . . . entities like . . . mortgage holders . . . .  You did bring some tax bills with you today, and I have marked those as Exhibit 14, 15, and 16.  But do you have any other documents responsive to that request, Mr. D'Andrea?  A. That's all I have."  Id. at 96:3-14.

Put another way, Defendant asked Plaintiff about documents he possessed from entities such as mortgage holders, and then Defendant asked Plaintiff if there is or was a mortgage on the

Property, to which Plaintiff responded "no."   In context, a reasonable juror could conclude that Plaintiff answered the mortgage question in the negative, because there actually was no mortgage on the Property involving an ordinary "mortgage holder"—such as a bank.   In fact, it is particularly noteworthy that rather than asking if Plaintiff had a mortgage on the property at any point during the EUO, Defendant's counsel only ever used the word "mortgage" three times during the EUO, all of which occurred during the foregoing two questions.   See generally ECF Doc. No. 22-4.   At every other point during the seven-hour-long EUO, Defendant's counsel used the words "land contract" or "agreement" whenever he was questioning Plaintiff about the transaction with his son. Id.   In short, context matters, particularly because summary judgment on the issue of Plaintiff's alleged intent was premised, at least in part, on a single-word answer to a single question by Defendant's counsel.

Last, Defendant argues that Plaintiff's production of the deed and mortgage after his EUO somehow further demonstrates his intent to defraud Defendant about the mortgage.   That argument, however, defies logic.   First, Plaintiff testified in his EUO about the timing and payment details of the transaction with his son.   See EUO Tr. 25:14-30:10, ECF Doc. No. 44-3.   Plaintiff also acknowledged that there were at least some written documents in connection with the transaction, and Defendant's counsel understood that to be the case because he noted that he was going to follow-up with a written request for those documents.   See id.

Second, following the EUO, Plaintiff actually produced the first page of the deed and the note relating to the transaction with his son.   See Declaration of Roy A. Mura, ¶ 18, ECF Doc. No. 22-2 (acknowledging Plaintiff provided the documents to him on November 8, 2013).   During his EUO, Plaintiff noted he was having difficulty locating all of the documents Defendant requested from him (EUO Tr. 27:2-11, ECF Doc. No. 44-3), and rather than ignoring Defendant's follow-up

document request, he produced the pages of the documents he was able to find.  After all, Plaintiff testified about the transaction, and then produced documents relating to that transaction to Defendant.  Thus, to infer some sinister intent to defraud Defendant from that series of events requires the facts and inferences drawn from them to be construed against Plaintiff, even though he was the non-moving party on summary judgment.

Therefore, Plaintiff's testimony demonstrates there are genuine issues of material fact about whether and to what extent he made any willful misrepresentations about a mortgage on the property, let alone whether he clearly and convincingly did so with intent to defraud Defendant. See United States v. Rem, 38 F.3d 634, 644 (2d Cir. 1994) ("Resolutions of credibility conflicts and choices between conflicting versions of the facts are matters for the jury, not for the court on summary judgment."); Pritchard, 2018 U.S. Dist. LEXIS 29627, at *5 ("a court's role in deciding a summary judgment motion is 'not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'""").  Accordingly, Defendant's motion for summary judgment should have been denied.

## CONCLUSION

Plaintiff respectfully submits that the Court overlooked or misapprehended vital portions of Plaintiff's testimony regarding the deed and mortgage for the property at issue when it determined, as a matter of law, that Defendant proved Plaintiff's intent to defraud Defendant by clear and convincing evidence.  Specifically, the Court made mixed-credibility-and-factual determinations adverse to Plaintiff; however, those determinations are contradicted by Plaintiff's testimony as discussed above, and any weighing of evidence and credibility determinations should be made by the trier of fact at trial.

Therefore, Plaintiff respectfully requests that the Court issue an Order pursuant to Fed. R. Civ. P. 59(e) or 60(b), either: (1) amending this Court's Decision and Order, dated and entered August 28, 2018 (the "Decision"), to deny Defendants' motion for summary judgment in its entirety, or (2) granting reconsideration of the Decision, and upon reconsideration, denying Defendant's motion for summary judgment.

Dated:    November 6, 2018
             Buffalo, New York

                                          **DUKE HOLZMAN PHOTIADIS & GRESENS LLP**


                                  By:      *s/ Charles C. Ritter*
                                           Charles C. Ritter, Esq.
                                           Thomas D. Lyons, Esq.
                                           *Attorneys for Plaintiff, Dennis D'Andrea*
                                           701 Seneca Street, Suite 750
                                           Buffalo, New York 14210
                                           (716) 855-1111
                                           critter@dhpglaw.com
                                           tlyons@dhpglaw.com